| DISTRICT COURT, JEFFERSON COUNTY, COLORADO | |
|---|---|
| Address of Court: 100 Jefferson County Parkway Golden, CO 80401 | DATE FILED: May 7, 2019 10:20 PM<br>FILING ID: 94CE4F3ED8FE9<br>CASE NUMBER: 2019CV30724 |
| Plaintiff: EL TAPATIO, INC. dba:<br>EL TEJADO MEXICAN RESTAURANT,<br><br>v.<br><br>Defendant: HAMILTON SPECIALTY INSURANCE COMPANY. | **▲FOR COURT USE ONLY▲** |
| **ATTORNEYS FOR PLAINTIFF:**<br>Jonathan E. Bukowski, Esq. #45614<br>Larry E. Bache, Esq. #51958<br>Timothy G. Burchard, Esq. #48635<br>MERLIN LAW GROUP, P.A.<br>1001 17th Street, Suite 1150<br>Denver, CO 80202<br>Phone: 720-665-9680<br>Fax: 720-665-9681<br>E-Mail: jbukowski@merlinlawgroup.com<br>E-Mail: lbache@merlinlawgroup.com<br>E-Mail: tburchard@merlinlawgroup.com | Case Number:<br><br>Div.: Ctrm: |
| **COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF** | |

**COMES NOW** Plaintiff, El Tapatio, Inc. dba: El Tejado Mexican Restaurant, by and through its undersigned counsel, and hereby submit this its Complaint against Defendant, Hamilton Specialty Insurance Company, and in support of its Complaint, allege and aver as follows:

## NATURE OF CLAIMS

1.      Plaintiff brings this action seeking a determination of the parties' legal rights and obligations under the insurance policy and seeking economic and non-economic damages related to Defendant's breach of contract, statutory claims pursuant to C.R.S. §§10-3-1115 and 10-3-1116, and bad faith breach of insurance contract, arising from Defendant's unreasonable delay and failure to pay in full covered benefits due and owing to Plaintiff under its insurance policy.

## PARTIES

2. Plaintiff, El Tapatio, Inc. dba: El Tejado Mexican Restaurant ("Plaintiff") is a Colorado corporation with its principal office in Lakewood, Colorado.

3. Upon information and belief, Defendant, Hamilton Specialty Insurance Company ("Defendant" or "Hamilton Specialty"), is an insurance company licensed with the State of Colorado with the Division of Insurance engaged in the business of issuing property and casualty insurance policies insuring commercial and other properties in the State of Colorado.

## JURISDICTION AND VENUE

4. This Court has subject matter and personal jurisdiction over the parties to this cause of action.

5. A cause of action exists under Colorado state law for claims regarding the conduct complained of herein.

6. Jurisdiction is proper as to Hamilton Specialty Insurance Company pursuant to Colorado Revised Statutes § 13-1-124(1)(a), (b), and (d) because Hamilton Specialty Insurance Company conducted the business at issue in this action, committed tortious misconduct and contracted to insure property within the State of Colorado.

7. Venue is proper pursuant to Col.R.Civ.P. 98 because it is the venue in which the cause of action accrued and where the insured property in question is located.

## FACTS COMMON TO ALL COUNTS

8. This matter arises from a disputed property insurance claim occurring during the time that Defendant's insurance policy provided coverage for Plaintiff's insured property.

9. In exchange for the premium paid, Defendant issued Plaintiff a property insurance policy, Policy Number ENHSPR 00194-00-17 (the "Policy").

10.     The Policy provides coverage to property located at 5390 Wadsworth Bypass, Arvada, Colorado 80002 (the "Property").

11.     The Policy is an all risk policy of insurance.

12.     The Policy is a replacement cost value policy and covers loss to the Property.

13.     The Policy provides coverage for direct physical loss or damage to covered property at the premises caused by or resulting from any covered cause of loss.

14.     The Policy provides coverage for alterations to the physical appearance of the Property resulting from hail or wind.

15.     The Policy provides coverage for cosmetic damage to the Property resulting from hail or wind.

16.     The Policy provides for the repair, rebuild or replacement of the damaged property with other property of like kind and quality.

17.     The Policy does not require that the Property sustain functional damage for coverage to be afforded to direct physical loss or damage to covered property at the premises caused by or resulting from any covered cause of loss.

18.     The Policy does not require that the water-shedding capabilities of a roofing system be compromised for coverage.

19.     The Policy does not require that the long-term service life of a roofing system be compromised for coverage.

20.     The Policy does not require that the functionality of a building component be compromised for coverage.

21.     The Policy does not include a cosmetic exclusion.

22.     The Policy does not provide a cosmetic limiting endorsement.

23.     The Policy provides coverage for the reasonable uniform appearance between the repair, rebuild or replacement of the damaged property and the materials existing on the Property.

24.     Under the Policy, Defendant agreed to adjust all losses with Plaintiff fairly and timely.

25.     Plaintiff paid the premiums due under the Policy in a timely manner.

26.     Plaintiff performed all duties and responsibilities required of it under the Policy.

27.     General contractor overhead and profit are the fees charged by a general contractor to manage, supervise, and coordinate repairs to damaged property such as Plaintiff's Property.

28.     The Policy provides coverage for general contractor overhead and profit when it is reasonably likely the services of a general contractor would be required to manage, supervise, and coordinate repairs to the Property.

29.     Plaintiff is entitled to general contractor overhead and profit under the Policy regardless of its intention to complete repairs to the Property when it is reasonably likely the services of a general contractor would be required to manage, supervise, and coordinate repairs to the Property.

30.     Plaintiff is entitled to general contractor overhead and profit under the Policy regardless of whether Plaintiff will actually be using a general contractor to complete repairs to the Property when it is reasonably likely the services of a general contractor would be required to manage, supervise, and coordinate repairs to the Property.

31.     Plaintiff is entitled to general contractor overhead and profit under the Policy regardless of whether Plaintiff will itself be completing repairs to the Property when it is reasonably likely the services of a general contractor would be required to manage, supervise, and coordinate repairs to the Property.

32.     Plaintiff is entitled to payment of general contractor overhead and profit under the Policy on an actual cash value basis when it is reasonably likely the services of a general contractor would be required to manage, supervise, and coordinate repairs to the Property.

33.     On or about May 8, 2017, during the Policy period, the Property suffered direct physical loss and/or damage resulting from hail and/or wind.

34.     The direct physical loss and/or damage resulting from the hail and/or wind constituted a covered loss under the Policy.

35.     The hail and wind storm caused direct physical loss and/or damage to the roofing systems covering the Property.

36.     The direct physical loss and/or damage resulting from the hail and/or wind resulted in functional damage to the Property leading to interior leaks.

37.     The direct physical loss and/or damage resulting from the hail and/or wind prevented the roofing systems covering the Property from continuing to function as a barrier to entrance of the elements to the same extent as they did before the hail damage occurred.

38.     The direct physical loss and/or damage resulting from the hail and/or wind has diminished the long-term service life of the roofing systems covering the Property.

39.     The direct physical loss and/or damage resulting from the hail and/or wind was promptly reported to Defendant by Plaintiff.

40.     Defendant is a for-profit insurance company.

41.     Defendant assigned Claim Number ERHS10215 to Plaintiff's loss.

42.     Defendant retained Ethan Swancer ("Swancer"), an estimator with Associated Adjusters Network, to assist in the preparation of an estimate to repair the direct physical loss and damage to the Property resulting from the hail and wind storm occurring on May 8, 2017.

43.     Swancer performed an inspection of the Property on May 16, 2017.

44.     On October 27, 2017, Swancer generated an estimate outlining $192,630.12 in replacement cost value benefits and $158,749.68 in actual cash value benefits to repair the direct physical loss and damage to the Property resulting from the hail and wind storm occurring on May 8, 2017 ("Swancer Repair Estimate").

45.     The Swancer Repair Estimate failed to fully indemnify Plaintiff for the direct physical loss and damage sustained to the Property, including but not limited to, failing to include allowance for all interior damages to the Property; failing to include proper allowance for severity of damages to the HVAC systems;; failing to include an allowance for a boom truck and operator to lift the roofing materials onto to the roofing system of the Property; failing to include proper allowance for window repairs; failing to include an allowance for general contractor overhead an profit; and failing to include allowance for insulation required by applicable building code.

46.     The Swancer Repair Estimate contemplated the coordination of at least seven trades, including HVAC; roofing; painting; stucco; sign repair; debris removal; and numerous tradesman for interior repairs.

47.     The Swancer Repair Estimate contemplated the coordination of replacement of the flat roofing system; repairs to damaged HVAC units; repairs to damaged stucco; painting; replacement of light fixtures; coordination of dumpster for disposal of materials; sign repair; and numerous interior repairs, including replacement of ceiling tiles, replacement of sixteen light fixtures, and crown molding.

48.     Despite the coordination of numerous tradesmen outlined in Paragraph 46 and the complexity of the repairs outlined in Paragraph 47, the Swancer Repair Estimate did not provide

an allowance for general contractor overhead and profit fees to manage, supervise, and coordinate repairs to the Property outlined in the Swancer Repair Estimate.

49. Defendant adopted the Swancer Repair Estimate and made an actual cash value payment to Plaintiff in the amount of $158,749.68.

50. Defendant's failure to provide an allowance for general contractor overhead and profit fees to manage, supervise, and coordinate repairs to the Property outlined in the Swancer Repair Estimate resulted in breach of contract and delay of benefits to Plaintiff without a reasonable basis.

51. Defendant retained York Risk Management ("York") to assist with the administration of covered benefits to Plaintiff for direct physical loss and damage resulting from the hail and wind storm occurring on May 8, 2017.

52. Despite being provided with an estimate for the additional insulation required by applicable local building code, Defendant has failed to provide Plaintiff with covered benefits to meet the additional insulation requirements.

53. Despite being provided with an estimate to repair direct physical loss of and damage to metal lath & stucco, Defendant refuses to provide additional benefits to Plaintiff to repair its damaged metal lath & stucco to its pre-loss condition.

54. Despite providing Defendant with a proposal to repair direct physical loss of and damage to four HVAC units in the amount of $65,159.00, Defendant refuses to provide additional benefits to Plaintiff to repair its damaged HVAC to their pre-loss condition.

55. Despite providing Defendant with a proposal to repair direct physical loss of and damage to four HVAC units in the amount of $22,742.49, Defendant refuses to provide additional benefits to Plaintiff to repair its damaged signage to its pre-loss condition.

56.     Despite being provided with additional information demonstrating outstanding covered benefits, York and Defendant have refused to work with Plaintiff to resolve the deficiencies contained within the Swancer Repair Estimate.

57.     The Policy limits Colorado's statutory time period for Plaintiff to file a lawsuit to only two-years from the date of loss.

58.     Plaintiff requested Defendant enter into a tolling agreement to avoid the filing of litigation. Unfortunately, no response was provided to Plaintiff prior to the filing of this action.

59.     On May 7, 2019, Plaintiff issued correspondence to Defendant invoking the appraisal clause of the Policy to determine the amount of loss resulting from the hail and wind storm occurring on or about May 8, 2017.

60.     Plaintiff has at all times fully cooperated with Defendant.

61.     Plaintiff has at all times attempted to work with Defendant and its representatives to move the claim forward and resolve the existing differences.

62.     Defendant, however, has continually refused to pay the full amounts due and owing under the Policy.

63.     To date, Defendant has refused to provide full indemnification to Plaintiff despite knowing or reasonably should know that it is required to do so.

64.     Defendant knew, or should have known, that its actions were unreasonable. Despite this fact, Defendant acted unreasonably and with knowledge, or reckless disregard of, its unreasonableness, thereby causing damages to Plaintiff.

65.     Defendant's course of conduct demonstrates its failure to conduct a full, fair, and thorough investigation of Plaintiff's claim for direct physical loss and damage resulting from the hail and/or wind storm occurring on or about May 8, 2017.

66.     Defendant's course of conduct demonstrates its failure to treat Plaintiff's interests with equal regard to its own.

67.     Despite receiving information substantiating a covered loss, Defendant has not attempted in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff's claim where liability has become reasonably clear.

68.     Defendant has failed to reasonably investigate Plaintiff's claim for direct physical loss of and/or damage to the Property resulting from a hail and/or wind storm occurring on or about May 8, 2017.

69.     Defendant has ignored evidence of covered hail damage to the Property resulting from the hail and/or wind storm occurring on or about May 8, 2017.

70.     Defendant has failed to fully indemnify its Insured for all covered benefits due and owing for the direct physical loss of and/or damage to the Property resulting from a hail and/or wind storm occurring on or about May 8, 2017.

71.     Defendant's failure to pay the claim in full has resulted in a breach of contract.

72.     Defendant's failure to pay the claim has resulted, and continues to result, in additional damages to the Property.

73.     Defendant's failure to pay the claim has resulted in financial hardship to Plaintiff.

74.     Defendant's to pay the claim has resulted in an unreasonable delay and denial in covered benefits without a reasonable basis.

75.     Plaintiff has fulfilled all duties required of it under the Policy after discovery of the loss.

76.     Plaintiff has performed all conditions precedent and subsequent required under the Policy, or alternatively, has been excused from performance by the acts, representations, and/or conduct of Defendant.

77.     Most concerning, Defendant has compelled Plaintiff to institute litigation to recover amounts due under its insurance Policy by offering substantially less than Plaintiff's amount of loss.

**FIRST CLAIM FOR RELIEF**
**(Request for Declaratory Relief – Compel Appraisal)**

78.     Plaintiff realleges and reaffirms Paragraphs 1-77 as if fully set forth herein.

79.     The Parties have a dispute as to Defendant's obligations to comply with the insurance Policy.

80.     On May 7, 2019, Plaintiff sent correspondence to Defendant invoking the appraisal provision contained in the insurance Policy.

81.     In relevant part, the Policy provides:

**2.     Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a.     Pay its chosen appraiser; and
b.     Bear the other expenses of the appraisal and umpire equally.

82.     Plaintiff has not received a response to its appraisal invocation prior to the filing of this action.

83.     Plaintiff is requesting this Court to order the parties to participate in the appraisal process as required by the terms and conditions of the Policy.

84.     There is an actual and justiciable controversy concerning Defendant's obligation to comply with the Policy and the effect of Defendant's refusal to do so.

**WHEREFORE** Plaintiff, El Tapatio, Inc. dba: El Tejado Mexican Restaurant, respectfully requests this Court enter judgment in its favor on Plaintiff's First Claim for Relief and determine: (1) Defendant is required to resolve any disputes over the amount of loss, including the causation of disputed damages, in the appraisal process; (2) Defendant must comply with the terms of the Policy and cannot modify or add terms or conditions that were not in the Policy at the time it was issued; and (3) awarding any other such relief as this Court deems just and appropriate.

## SECOND CLAIM FOR RELIEF
### (Breach of Contract)

85.     Plaintiff realleges and reaffirms Paragraphs 1-77 as if fully set forth herein.

86.     Plaintiff and Defendant entered into a valid and enforceable contract for insurance.

87.     Plaintiff has fully complied with all provisions of the contract and all conditions precedent to coverage and this action.

88.     Despite the foregoing, Defendant has failed and/or refused to comply with its contractual obligations and pay for all covered damages at the Property.

89.     Defendant has breached the insurance contract by failing and/or refusing to pay the full amounts due and owing under the Policy in a timely manner.

90.     Defendant has breached the insurance contract by failing to promptly and properly adjust the loss suffered by Plaintiff.

91.     As a proximate result of Defendant's breaches of the insurance contract, Plaintiff has suffered damages and continues to suffer the loss.

**WHEREFORE**, Plaintiff, El Tapatio, Inc. dba: El Tejado Mexican Restaurant, respectfully requests this Court enter judgment against, Defendant, Hamilton Specialty Insurance Company, for damages resulting from its breach of contract, costs, pre-judgment interest, attorneys' fees pursuant to applicable law, and such other relief as the Court deems appropriate.

<u>**THIRD CLAIM FOR RELIEF**</u>
**(Bad Faith Breach of Insurance Contract)**

92.     Plaintiff realleges and reaffirms Paragraphs 1-91 as if fully set forth herein.

93.     The insurance contract between Defendant and Plaintiff includes an implied obligation of good faith and fair dealing.

94.     Under the Policy and Colorado law, Defendant had a duty to act reasonably and in good faith in the handling of Plaintiff's claim.

95.     Under the Policy and Colorado law, Defendant had a duty to act with ordinary, reasonable diligence in investigating the claims submitted by Plaintiff.

96.      Under the Policy and Colorado law, Defendant had a duty to act with ordinary, reasonable diligence in determining the amounts due and owing under the Policy in question.

97.     Under the Policy and Colorado law, Defendant had a duty to act with ordinary, reasonable diligence to pay all amounts due and owing pursuant to the Policy in question.

98.     Under the Policy and Colorado law, Defendant owes Plaintiff the duty of good faith and fair dealing.

99.     Defendant has a continuing obligation to act in good faith during the adjustment of the claim.

100.    At all times material hereto, Defendant had the non-delegable duty to investigate the claim objectively and to not look for ways to deny benefits or attempt to not pay the full amount owed.

101.   At all times materials hereto, Defendant owed Plaintiff the duty to give equal consideration to the financial interests of its insured and not to give greater consideration to its own financial interests while investigating and adjusting its insured's claims.

102.   At all times material hereto, Defendant had an obligation to conduct a thorough, fair, unbiased, and timely investigation of the claim presented to it, and then properly evaluate and timely pay those claims.

103.   Defendant sold Plaintiff the Policy at issue, the intent of which was to provide benefits for covered losses that occurred during the Policy period.

104.   Defendant knew that the Policy was purchased to protect the Property in the event of a loss.

105.   Plaintiff has cooperated with Defendant in the processing of the claim for covered benefits resulting from a hail and/or wind storm occurring on or about May 8, 2017.

106.   Plaintiff has cooperated with Defendant in the investigation of the claim for covered benefits resulting from a hail and/or wind storm occurring on or about May 8, 2017.

107.   Plaintiff has not erected any obstacles to Defendant's ability to investigate Plaintiff's claim for covered benefits resulting from a hail and/or wind storm occurring on or about May 8, 2017.

108.   Plaintiff has not erected any obstacles to Defendant's ability to evaluate Plaintiff's claim for covered benefits resulting from a hail and/or wind storm occurring on or about May 8, 2017.

109.   Defendant disregarded the validity of Plaintiff's claim for direct physical loss and damage resulting from the hail and/or wind storm occurring on or about May 8, 2017.

110. Defendant has breached its covenant of good faith and fair dealing that it owes to Plaintiff by engaging in a pattern of conduct designed to deprive Plaintiff of its rights and benefits under the Policy by failing to fully investigate Plaintiff's reported damages.

111. Defendant breached its duty to act reasonably and in good faith by failing to conduct a reasonable and timely investigation of the facts and law applicable to this matter including its failure to identify clear evidence of hail related damages to the roofing systems.

112. Defendant breached its duty to act reasonably and in good faith by failing to appropriately value the entire loss.

113. Defendant breached its duty to act reasonably and in good faith by favoring its interests to the exclusion of Plaintiff.

114. Defendant breached its duty to act reasonably and in good faith by failing to effectuate prompt, fair and equitable resolution of Plaintiff's claims after liability had become clear.

115. Defendant breached its duty to act reasonably and in good faith by conducting an incomplete, or outcome-oriented investigation of the loss.

116. Defendant breached its duty to act reasonably and in good faith by incorrectly valuing the claim.

117. Defendant breached its duty to act reasonably and in good faith by compelling Plaintiff to become involved in litigation to enforce the Policy and recover amounts due.

118. Defendant breached its duty to act reasonably and in good faith by otherwise unreasonably and improperly handling Plaintiff's claim as provided for by C.R.S. § 10-3-1104.

119. Defendant knew and/or should have known that its conduct was unreasonable.

120. Defendant recklessly disregarded the fact that its conduct was unreasonable.

121.   Defendant's conduct constitutes a breach of the covenant of good faith and fair dealing implied in every insurance contract.

122.   As a result of Defendant's actions, Plaintiff has suffered damages, and continues to suffer the loss.

**WHEREFORE**, Plaintiff, El Tapatio, Inc. dba: El Tejado Mexican Restaurant, respectfully requests this Court enter judgment against Defendant, Hamilton Specialty Insurance Company, for damages resulting from bad faith breach of insurance contract, costs, pre-judgment interest, attorneys' fees pursuant to applicable law, and such other relief as the Court deems appropriate.

## FOURTH CLAIM FOR RELIEF
### (Unreasonable Delay and Denial of Payment of Covered Benefits Pursuant to C.R.S. §§ 10-3-1115 and 10-3-1116)

123.   Plaintiff re-alleges and reaffirms Paragraphs 1-77 as though fully set forth herein.

124.   Plaintiff suffered a loss to Property covered by the Policy and provided timely notice of the direct physical loss and damage to Defendant.

125.   Under Colorado Revised Statute § 10-3-1115, an insurer who delays or denies payment to an insured without a reasonable basis for its delay or denial is in breach of the duty of good faith and fair dealing.

126.   Under Colorado Revised Statute § 10-3-1115, an insurer's delay or denial is unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action.

127.   Plaintiff is a first-party claimant within the meaning of Colorado Revised Statute § 10-3-1115(1)(b)(1).

128.     Defendant delayed payment of covered benefits without a reasonable basis for its actions.

129.     Defendant denied payment of covered benefits without a reasonable basis for its actions.

130.     Defendant has delayed payment of the insurance benefits paid to date without a reasonable basis by failing to perform a full and complete investigation with competent and impartial individuals.

131.     Defendant has delayed and denied payment of covered insurance benefits without a reasonable basis by failing to promptly investigate the direct physical loss and damage resulting from a hail and wind storm occurring on May 8, 2017.

132.     Defendant has delayed and denied payment of covered insurance benefits without a reasonable basis by failing to promptly make payment for the direct physical loss and damage resulting from a hail and wind storm occurring on May 8, 2017.

133.     Defendant has delayed and denied payment of covered insurance benefits without a reasonable basis by failing to complete a full investigation.

134.     Because Defendant lacked a reasonable basis for which to delay and/or deny payment to Plaintiff, Defendant has violated C.R.S. § 10-3-1115 and is liable to Plaintiff for the remedies provided by C.R.S. § 10-3-1116.

135.     Based upon the foregoing Paragraphs is therefore entitled to two times the covered benefit, attorneys' fees, and costs pursuant to C.R.S. § 10-3-1116, together with pre-judgment interest at the highest rate allowed by law.

**WHEREFORE**, Plaintiff, El Tapatio, Inc. dba: El Tejado Mexican Restaurant, respectfully requests this Court enter judgment against Defendant, Hamilton Specialty Insurance

Company, for damages authorized pursuant to Colorado Revised Statute § 10-3-1116, costs, pre-judgment interest, attorneys' fees pursuant to applicable law, and other such relief as the Court deems appropriate.

## REQUEST FOR JURY TRIAL

136.    Plaintiff requests trial by jury with respect to all claims and issues triable to a jury.

Respectfully submitted this 7th day of May, 2019.

/s/ Jonathan E. Bukowski
Larry E. Bache, Jr., Esq.
Jonathan E. Bukowski, Esq.
Timothy G. Burchard, II
Merlin Law Group, PA
1001 17th Street, Ste. 1150
Denver, CO 80202
Telephone:  720-665-9680
Facsimile:  720-665-9681
E-Mail: lbache@merlinlawgroup.com
E-Mail: jbukowski@merlinlawgroup.com
E-Mail: tburchard@merlinlawgroup.com